Lee F. Hoffman, Esq.  SBN: 308941
LAW OFFICE OF LEE F. HOFFMAN
111 West Saint John Street, Suite 700
San Jose, CA 95113
(408)883-2220
leehoffmanjd@gmail.com

Attorney for Plaintiff
MICHAEL PEREIRA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| MICHAEL PEREIRA, | Case Number:  5:24-cv-01772 |
|---|---|
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | 1. EXCESSIVE FORCE<br>2. FAILURE TO INTERVENE<br>3. RATIFICATION<br>4. UNCONSTITUTIONAL CUSTOMS AND PRACTICES – USE OF FORCE REVIEW<br>5. FALSE ARREST |
| CITY OF SAN JOSE; and DOES 1 to 10 inclusive, | |
| Defendants. | **[JURY TRIAL DEMANDED]** |

Plaintiff Michael Pereira, by and through his attorney, Lee F. Hoffman, alleges violations of his Constitutional rights by the Defendants and alleges as follows:

**I.**

**JURISDICTIONAL STATEMENT**

1.  Pursuant to 28 USC §1331, this Court has jurisdiction over this matter because it alleges causes of action or claims arising out of the United States Constitution and the laws of the United States, including but not limited to:  42 USC §1983 and 1985.

**II.**

**STATEMENT OF VENUE**

2.  The acts or omissions alleged herein occurred in the Northern District of California, city of San Jose, County of Santa Clara; thereby providing venue for the Northern District of

California.

## III.

## JURY DEMAND

3. Plaintiff hereby demands a jury trial for all claims alleged in this Complaint.

## IV.

## PARTIES

4. Plaintiff Michael Pereira is, and at all relevant times was, a resident of Santa Clara County, CA.

5. Defendant CITY OF SAN JOSE is, and at all relevant times alleged herein was, a public entity situated in the County of Santa Clara, State of California, and organized under the laws of the state of California. The City is, and at all relevant times alleged herein was, responsible for supervising, enacting, and enforcing the conduct, policies, practices, hiring, retention, supervision, and training of the San Jose Police Department and its subordinate units, officers, agents, and employees. The City is liable for the intentional, reckless, and negligent acts of all the aforementioned parties, personnel, and entities as described herein.

6. DOE Defendant number one (1) is and at all relevant times alleged herein was, a police K-9 officer employed by the San Jose Police Department (SJPD). In committing acts and omissions alleged herein, Defendant DOE number one (1) acted under color of law and within the course and scope of his employment with the City.

7. DOE Defendants two (2) through ten (10) at all relevant times alleged herein were sworn police officers employed by San Jose Police Department.

## V.

## STATEMENT OF FACTS

8. Based on information and belief, on or about March 23, 2022 DOE Defendants one (1) through ten (10), effectuated a warrantless arrest of Mr. Pereira.

9. During the apprehension of Plaintiff Michael Pereira, DOE Defendants one (1) through

COMPLAINT FOR DAMAGES
2

ten (10) located Plaintiff Michael Pereira sitting in his vehicle outside a McDonalds restaurant eating ice cream. Defendants did not announce themselves or give Mr. Pereira an opportunity to surrender himself.

10. Based on information and belief, DOE Defendants one (1) through ten (10) were sworn officers in the SJPD. Based on information and belief, they all received training on proper police procedures and safeguarding suspects' constitutional rights. They failed to follow basic police procedures regarding the arrest of suspects in that they used force that was completely out of proportion to the level of threat posed by Mr. Pereira. They also failed to get an arrest warrant prior to taking Mr. Pereira into custody.

11. Mr. Pereira became aware of the police officers' presence when multiple unmarked vehicles collided with his parked car. Multiple flash-bang grenades were then thrown through his windows into his vehicle where Mr. Pereira was sitting with his dogs. Both dogs jumped out of the broken windows when the flash-bang grenades detonated.

12. Mr. Pereira struggled to regain his senses as he attempted to exit the vehicle. He was able to get out of the vehicle over the center console. Once he exited the vehicle, he began putting his two dogs back in the car.

13. While Mr. Pereira was putting his dogs back in his car, he felt the impact of a so called less lethal round that he believed to be rubber bullets. After the impact he was able to get his second dog back into the car. He turned to a police officer and asked him why they shot him. The police officer ignored him, and Mr. Pereira heard one of them say words to the effect of "This is the second one. He's going down." At this time Mr. Pereira was shot a several more times with less lethal rounds believed to have been rubber bullets.

14. Mr. Pereira was unarmed. Mr. Pereira did not hear any commands from the police officers if any were ever made. Mr. Pereira was not resisting or attempting to flee.

15. Only after he was shot multiple times with rubber bullets did the police issue a command for Mr. Pereira to put his hands behind his back. Mr. Pereira complied. As he was standing with his hands behind his back, an officer approached Mr. Pereira and grabbed one of his wrists. Instead of grabbing the other one and attempting to put Mr. Pereira into handcuffs, the officer

twisted his arm causing a sprain. As he did this, multiple officers began shouting questions to Mr. Pereira.

16. They accused Mr. Pereira of having murdered and buried his daughter. They demanded to know where she was buried. Mr. Pereira replied that his daughter died four (4) years ago and is buried in Oakwood Cemetery. One of the officers shouted, "Your other daughter!"

17. After Mr. Pereira answered these questions with his insistence that he did not know what the officers were talking about, the officer who had ahold of his wrist raised and twisted Mr. Pereira's arm to the point that it broke, and his elbow was dislocated. The questioning continued and Mr. Pereira continued to insist on his lack of any knowledge regarding the accusations and questions.

18. At this point, Mr. Pereira felt the impact from another Officer's fist. He fell to the ground where officers continued to strike him.

19. Once he was on the ground a K-9 police dog began to bite him. When the officers noticed that someone was recording the incident from in or around the McDonalds, the officers pulled him to one side so that a pillar blocked the view of the person who was recording the incident. Mr. Pereira believes that the dog was pulled off and then allowed to bite him again during his ordeal. He was not resisting, was face down on the ground, and had several police officers on top of him. The dog was also pulled while its teeth were in Mr. Pereira's flesh causing the wounds to be torn open.

## VI.

### STATEMENT OF DAMAGES

20. As a result of the acts or omissions alleged herein, Plaintiff Michael Pereira suffered multiple serious injuries including, but not limited to a broken and dislocated elbow, deep bruising from being shot by less lethal rounds from a firearm. He also suffered over a hundred puncture wounds and lacerations from the K-9 dog being used by the SJPD officers during his arrest. He also suffered and continues to suffer from fear, anxiety, and depression. Plaintiff Michael Pereira still suffers from the lasing injuries he suffered due to the injuries suffered during

the unnecessary and excessive force used by DOE Defendants one (1) through ten (10).

## VII.

## **FIRST CLAIM FOR RELIEF**

[For violation of Civil Rights, 42 U.S.C. § 1983 -Against The City of San Jose and Does 1 through 10 (unknown police officers)  for Violations of Mr. Pareira' Fourth and Fourteenth Amendment Rights- use of excessive force.]

21. Plaintiff hereby alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this complaint.

22. The officers involved in Plaintiff's arrest violated his clearly established to be free from the intentional and unreasonable use of excessive force as guaranteed by the Fourth Amendment to the United States Constitution.

23. Objectively reasonable officers would have known that the use of force upon the Plaintiff was excessive and could cause serious injury.  Deploying flash-bang grenades into the enclosed space of an automobile amplifies the concussive effect of those devices.  Shooting a person with rubber bullets from near point-blank range can be deadly because they impact the target at a much higher velocity than they ordinarily would if they were fired at a distance.  Put simply, the closer the target is to the gun firing the rubber bullet, the more damage is done to the target.

24. These Defendants further knew that by raising and twisting Plaintiff's arm to the extent that they did would likely cause serious injury.

25. The Defendants knew that allowing a K-9 dog to bite Plaintiff would cause serious injury and that pulling on the dog when its teeth were sunk into Plaintiff's flesh would exacerbate those wounds.  The Defendants further knew that the use of the police K-9 was not necessary at all because Plaintiff was already subdued and had not offered any form of resistance.

///

///

///

## VIII.

## SECOND CLAIM FOR RELIEF

[42 U.S.C. § 1983 – Failure to Intervene- Against DOE Defendants 1 through 10]

26. Plaintiff hereby alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this complaint.

27. DOE Defendants 1 through 10 in this case could see what the other officers were doing at various times during the arrest of Plaintiff.

28. The officers who did not fire rubber bullets at the Plaintiff and who could also see that he was unarmed had a duty to intervene.  They knew or should have known that shooting a human being at a short distance with rubber bullets could cause severe injury, especially if the person being shot was hit in a vital area such as the head or neck.  Therefore, the officers who were not shooting and could see that the Plaintiff was not resisting, armed, or attempting to flee, had a duty to stop the officers who were firing less lethal rounds at the Plaintiff.

29. The Officers who could see the Plaintiff with his hands behind his back while one or more officers twisted and raised Plaintiff's arm knew or should have known that this was not proper procedure.  They also knew or should have known that raising a person's arm to the degree that it was raised could cause serious injury to that person's arm.

30. The officers other than the K-9 officer (DOE Defendants 2 through 10) who could see that Plaintiff was already in the prone position with several officers on top of him.  These officers knew or should have known that the use of a police K-9 on a subject who was already in the prone position with multiple officers on top of him was excessive, unnecessary, and disproportionate to the circumstances.  These officers had a duty to intervene to stop the use of a K-9 dog on a subject in the position of the Plaintiff.

31. At all times described herein, DOE Defendants 1 through 10 could see that Plaintiff was unarmed, not attempting to flee, and not resisting arrest.  All officers on the scene had an obligation to intervene when they observed that excessive force was being used against Plaintiff given the circumstances.  All the officers on scene had a duty to intervene at one

point or another during the brutal assault on Plaintiff.

32. Discovery into the documents and evidence in the exclusive possession of the Defendants will further verify and expand on the factual allegations set forth in this claim.

## IX.

## THIRD CLAIM FOR RELIEF

[For violation of Civil Rights, 42 U.S.C. §1983 – Municipal Liability For Ratification – City of San Jose]

33. Plaintiff hereby alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this complaint.

34. The way the City of San Jose was structured at the time of this incident gave final policy making authority for the City of San Jose for acts and omissions of their officers to the Police Department's chain of command.

35. No one from San Jose Police Department has contacted Plaintiff to inquire into the events that occurred on or about March 23, 2022. Likewise, no one from the Santa Clara County District Attorney's Office has contacted Plaintiff. Without the benefit of discovery, the only logical conclusion is that the San Jose Police Department is not interested in learning more about what happened from Plaintiff's perspective in order to enact appropriate discipline. Similarly, the fact that no investigators from the Santa Clara County District Attorney's Office contacted the Plaintiff can only lead one to conclude that the San Jose Police Department did not refer the matter to the Santa Clara District Attorney's Office for criminal charges or further investigation of criminal charges against the officers involved.

36. The only logical conclusion that a reasonable person could reach from the facts in the preceding paragraphs is that the City, through its police chain of command, has ratified the conduct of the officers involved in the incident that put Plaintiff in the hospital in March of 2022.

37. Further information obtained during discovery is expected to provide further evidence to support Plaintiff's contention that the San Jose Police Department did conduct a legitimate investigation of its officers' use of force and thereby approved of their actions.

///
///
///

## X.

## FOURTH CLAIM FOR RELIEF

38. [42 U.S.C. § 1983 – Municipal Liability For Customs and Practices – Use of Force Review – City of San Jose]

39. Plaintiff hereby alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this complaint.

40. The City of San Jose Police Department has a record of officers intentionally using excessive force against criminal suspects.

41. In 2018, a San Jose Police officer intentionally ran over a suspect with his vehicle. In 2015, The San Jose Police Department beat a suspect bad enough that he had to go to the emergency department.

42. In 2021, The Marshall Project, a non-partisan, non-profit journalism organization that focuses on the criminal justice system, highlighted San Jose Police Department's use of force that results in suspects being transported to the hospital.

43. The Marshall Project noted that between 2017 and 2020 1,300 suspects required transportation to the hospital following arrest. Of those individuals, 72 were considered to have been "seriously injured." These individuals had injuries including broken bones, internal injuries, and dog bites.

44. A recent report by the Office of the Independent Police Auditor found that complaints against SJPD officers has steadily increased since 2020. Supposedly, 9% of those complaints were categorized by the SJPD as complaints concerning use of force. "Use of force" is one of many categories used by the SJPD to track complaints against its organization.

45. The seemingly low number of the "use of force" category of complaints was shown to be false when report discovered a tactic used by the SJPD to make their statistics look better

than they actually were. It came to light that the SJPD was classifying complaints about an officer drawing their firearm on a suspect as a "procedure" complaint and not a "use of force" complaint. This intentionally misleading tactic used by the SJPD's Internal Affairs unit lays bare their consciousness of guilt regarding the SJPD's use of excessive force that is a systemic problem and not one of a few bad officers.

46. Plaintiff requested the body-worn-camera (BWC) video from Plaintiff's arrest, but that request was denied. The SJPD claimed that the BWC video is associated with an ongoing criminal enforcement proceeding by the SJPD and/or the Santa Clara County District Attorney's Office.

47. Plaintiff has not been contacted by SJPD or any investigator for the District Attorney's Office. There have been no search warrants executed involving Plaintiff. Due to the total absence of any evidence of an investigation of crimes by Plaintiff that would be indicated by subpoenas for records or search warrants, Plaintiff believes that there is no current investigation into himself. The fact that no one has contacted Plaintiff from the Internal Affairs unit of the SJPD leads Plaintiff to believe that there is no current investigation by the SJPD or the DA's office into wrongdoing by SJPD officers in this matter.

48. It has been over the one year statutorily mandated time period (*Cal. Gov. Code* § 3300 *et seq.)* for an internal investigation that might result in discipline of any officer, and Plaintiff is unaware of any investigative steps to investigate the crime or crimes that led to the incident in 2022. Therefore, it is Plaintiff's belief that this rejection of his request for the BWC video is an attempt by the SJPD to let the statute of limitations run out on any civil claim he has.

49. The fact that no one contacted Plaintiff for two years after this serious use of force incident that resulted in great bodily injury to Plaintiff is evidence that the review process for the use of force by SJPD officers is woefully inadequate.

50. Further discovery will almost certainly lead to additional information of how the SJPD has attempted to sweep their officers' use of excessive force under the rug.

## XI.

## FIFTH CLAIM FOR RELIEF

[42 U.S.C. §1983 – False Arrest In Violation of Plaintiff's Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution – against DOE Defendants 1 through 10]

51. Plaintiff hereby alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this complaint.

52. Plaintiff was violently taken into custody. That fact is undeniable.

53. There was no arrest warrant issued based on probable cause prior to the DOE Defendants violent arrest of Plaintiff in direct violation of Plaintiff's right to be free from unreasonable searches or seizures guaranteed by the Fourth Amendment to the U.S. Constitution. Furthermore, the police could not have observed Plaintiff commit any crimes in their presence that would have justified their warrantless arrest as he was sitting in his car eating ice cream at the time he was arrested.

54. Arresting Plaintiff without a valid arrest warrant also violated his right to due process guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution.

55. Plaintiff suffered numerous physical injuries, fear, and humiliation as a result of his treatment by the SJPD.

56. The discovery process will lead to more evidence of how this group of police was able to form and execute their plan for an unlawful arrest.

## IV.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Pereira prays for the following relief:

1. For Plaintiff Michael Pereira, compensatory and general damages in the amount of five million dollars ($5,000,000);

2. Exemplary damages according to proof;

3. Reasonable attorney's fees and costs per 42 U.S.C. §1988(b) and (c);

4. Any other relief deemed proper by the Court.

DATED:  March 21, 2024

                                                   /S/ Lee F. Hoffman
                                   LEE F. HOFFMAN, Attorney for Plaintiff

COMPLAINT FOR DAMAGES
11